**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

IN THE MATTER OF:

Deanna L. Freeman, et al.,

     Debtor.

United States of America,

     Appellant,

v.

Lawrence J. Warfield, Trustee

     Appellee.

No. CV-21-08274-PCT-DJH

BK NO. 3:20-bk-10338-DPC

ADV NO. Adv. No. 3:21-ap-00176-DPC

   This bankruptcy appeal[1] arises from a Final Order (Doc. 11-23 at 5–7) issued by Bankruptcy Judge Daniel P. Collins of the District of Arizona.  Appellant United States of America (the "Government") argues Judge Collins erred when he allowed Appellee Trustee Lawrence J. Warfield (the "Trustee") to reduce payment on the tax and interest components of a lien secured by the Internal Revenue Services ("IRS") under 11 U.S.C §§ 724(b), 551.  The Court must decide whether bankruptcy sale proceeds should be allocated among the components of an avoided tax lien on a *pro rata* basis, priority basis, or under the distribution formula set forth by 11 U.S.C § 724(b).  For the following reasons, the Court affirms Judge Collins' Final Order allocating bankruptcy proceeds *pro rata* among

---

[1] The matter is fully briefed.  The Government filed an Opening Brief (Doc. 11), the Trustee filed a Response (Doc. 12), and the Government filed a Reply (Doc. 15).

the components of a tax lien avoided under 11 U.S.C. § 724(a).

**I.     Background**

This case is based on the sale of a Chapter 7 debtor's property that is subject to IRS tax liens.  Below is an overview of the property sale, tax liens at issue, as well as the adversary proceedings in bankruptcy court.

**A.     The Two IRS Tax Liens**

Upon assessment of Debtors Albert G. Freeman and Deana L. Freeman (the "Debtors"), the IRS recorded two Notices of Federal Tax Liens in 2017 and 2019 to secure amounts due based on the Debtors' tax returns.  (Doc. 11-9 at 5–8).  The IRS tax liens attached to the Debtors' real property at 3125 W. Big Chino Rd., Paulden, AZ, Assessor's Parcel No. 303-05-146 (the "Property") and was recorded with the Yavapai County Recorder at Recorder's Nos. 2017-0029538 ("the First Tax Lien") and 2019-0051272 ("the Second Tax Lien") (collectively the "Two Tax Liens").  (Doc. 11-5 at 6–7).  The First Tax Lien included secured claims covering tax years 2007–2015.  (*Id*. at 7).  The Second Tax Lien included secured claims covering tax years 2017–2018.  (*Id*. at 6).

On September 11, 2020, the Debtors filed a voluntary Chapter 13 bankruptcy petition in the Bankruptcy Court for the District of Arizona.  *In re Freeman*, No. 3:20-bk-10338-DPC (Bankr. D. Ariz. September 11, 2020), (Doc. 1).  The case was later converted to Chapter 7.  *Id*., (Doc. 30).

On March 18, 2021, the IRS filed a Proof of Claim (Doc. 11-5 at 1–5) under the Two Tax Liens that detailed the following components:

| | First Tax Lien | Second Tax Lien | Aggregate Totals |
|---|---|---|---|
| **Tax and Interest Components** | $256,669.98 | $11,250.59 | $267,920.57 |
| **Penalty Components** | $106,645.16 | $2,887.51 | $109,532.67 |
| **Total** | $363,315.14 | $14,138.10 | $377,453.24 |

(*Id*. at 4).

- 2 -

1

**B.     The Bankruptcy Sale Proceeds**

2

On May 11, 2021, Judge Collins authorized the Trustee to sell the Property for

3

$302,000.00 free and clear of the Two Tax Liens.  (Doc. 11-9 at 20–23).  The Trustee

4

reported the net sale proceeds were $218, 917.19 (the "Proceeds").  (*Id*. at 25–28).

5

**C.     The Adversary Proceedings**

6

On June 29, 2021, the Trustee filed a Complaint initiating an adversary case against

7

the Government.  *Warfield v. United States*, No. 3:21-ap-00176-DPC (Bankr. D. Ariz. June

8

29, 2021), (Doc. 1).  Therein, the Trustee requested to (1) avoid the penalty components of

9

the Two Tax Liens totalling to $109,532.67 under Section 724(a);[2] and (2) preserve the

10

avoided $109,532.67 amount for the benefit of the bankruptcy estate under Section 551.

11

*Id*., (Doc. 1 at 3).

12

The Trustee and the Government both filed cross motions for summary judgment.

13

(Doc. 11-8) (the Trustee's motion); (Doc. 11-13) (the Government's motion).  The Trustee

14

argued he can avoid the penalty components of the Two Tax Liens under Section 724(a),

15

and so $109,532.67 of the Proceeds should be allocated to the bankruptcy estate under

16

Section 551 for the benefit of unsecured creditors.  (Doc. 11-8 at 3–5).  The Government

17

argued the Proceeds should first be allocated to satisfy the $267,920.57 in unavoidable tax

18

and interest components or, alternatively, allocated under the formula set forth by Section

19

724(b).  (Doc. 11-13 at 10–15).

20

On November 29, 2021, Judge Collins held a Hearing on the cross motions.

21

(Doc. 11-21).  Two matters were undisputed: (1) the Second Tax Lien, as the junior lien,

22

would be disregarded from the Proceeds allocation (Doc. 11-21 at 24–25); and (2) the

23

Trustee could avoid the penalty components of the First Tax Lien under Section 724(a).

24

(*Id*. at 44).

25

Judge Collins announced two main rulings from the bench.  First, he held that

26

avoidance of the penalty components meant avoidance of "an undivided lien."  (*Id*.)  He

27

stated the First Tax Lien "is not a lien that is higher in priority for the tax portion and lower

28

---

[2] Except where otherwise noted, all section references are to the Bankruptcy Code, Title 11 of the United States Code.

in priority for the penalty portion, it is one lien that has two components." (*Id*. at 44–45). Thus, Judge Collins concluded the distribution formulas set forth by Sections 724(b) and 726 are inapplicable here. (*Id*. at 46–47).

Second, he employed principles of *stare decisis* to follow Arizona District Court decision in *United States v. Mackenzie* ("*Mackenzie*") and allocate the Proceeds *pro rata* among the First Tax Lien components. (*Id*. at 45) (citing 2021 WL 4427069 (D. Ariz. Sept. 27, 2021), *appeal dismissed sub nom. In re Leite*, 2022 WL 1671886 (9th Cir. Jan. 6, 2022)). Judge Collins noted "there was nothing in the Bankruptcy Code that specifically spoke to the question of . . . which component of the lien position is going to get the [proceeds]." (*Id*. at 46). Therefore, he ordered *pro rata* allocation as an equitable resolution of the issue under Section 105. (*Id*. at 48). He finally concluded the *pro rata* method was permissible because it "was not inconsistent with the Bankruptcy Code." (*Id*. at 45) (citing *Mackenzie*, 2021 WL 4427069, at *12).

On December 8, 2021, Judge Collins issued his Final Order and Judgment (the "Final Order") formalizing his rulings from the bench. (Doc. 11-23 at 5–7). He held the following:

(1)  The penalty components of the Two Tax Liens were avoided under Section 724(a) and preserved for the benefit of the bankruptcy estate under Section 551. (*Id*. at 4, ¶¶ 1–2).

(2)  The IRS's claims for $14,138.10 under the Second Tax Lien were treated as unsecured claims according to Section 506. This is because the $218,917.19 Proceeds were less than the IRS's claims for $363,315.14 under the First Tax Lien. Therefore, the IRS's claims for $14,138.10 under the Second Tax Lien were disregarded for the purpose of the allocation calculations. (*Id*. ¶ 3).

(3)  The $218,917.19 Proceeds were allocated *pro rata* based on the percentage of the avoidable penalty components and non-avoidable tax and interest components of the IRS's claims for $363,315.14 under the First Tax Lien. Under this method, 29.35% (or $106,645.16) of the First Tax Lien were avoidable penalties, while 70.65% (or $256,669.98) of the First Tax Lien were non-avoidable taxes and interest. (*Id*. ¶¶ 4–5) (See table below for calculations).

| First Tax Lien Components | Dollar Amount | Percentage | Interest |
|---|---|---|---|
| Penalty Components | $106,645.16 | 29.35% | Trustee |
| Tax and Interest Components | $256,669.98 | 70.65% | IRS |
| Total | $363,315.14 | 100% | |

(4)     Accordingly, the bankruptcy estate was entitled to 29.35% of the Proceeds ($64,252.37), which represents the percentage of the avoidable penalty components. The IRS was entitled to 70.65% of the Proceeds ($154,664.82), which represents the percentage of the non-avoidable tax and interest components. (*Id*.) (See table below for calculations).[3]

| Proceeds Components | Dollar Amount | Percentage | Interest |
|---|---|---|---|
| Avoidable Penalties | $64,252.37 | 29.35% | Trustee |
| Non-avoidable Taxes and Interest | $154,664.82 | 70.65% | IRS |
| Total | $218,917.19 | 100% | |

On December 21, 2020, the Government appealed Judge Collins' Final Order to this Court. (*Id*. at 1–4.) It argues the Final Order should be reversed and posed the following issues:

(1)     Did the Bankruptcy Court err by allowing the trustee to allocate a portion of the [P]roceeds to penalties, to be used to pay unsecured claims, before paying the secured claims for tax and interest? and

(2)     Even if the Bankruptcy Court was correct as to question 1, did the Bankruptcy Court nevertheless err in allocating the [P]roceeds to the tax, interest, and penalty components of the liens *pro rata*, when 11 U.S.C. § 724(b) provides a different formula for allocating the [P]roceeds of property subject to tax liens?

(Doc. 11 at 10–11).

## II.     Applicable Law

### A.     Standard of Review

A district court has jurisdiction to hear an appeal of a decision of a bankruptcy court. 28 U.S.C. § 158(a). In evaluating a bankruptcy court's final order, a district court

---

[3] As noted by the Government, the calculations will vary slightly depending on how the percentages are rounded. (Doc. 11 at 16 n.4).

"review[s] the bankruptcy court's finding of fact under the 'clearly erroneous' standard and its conclusions of law *de novo.*" *Retail Clerks Welfare Trust v. McCarty (In re Van de Kamp's Dutch Bakeries)*, 908 F.2d 517, 518 (9th Cir. 1990) ("*Van de Kamp*") (citing *In re Global W. Dev. Corp.*, 759 F.2d 724, 726 (9th Cir. 1985); *see also In re RCS Cap. Dev., LLC*, 2013 WL 3619172, at *4 (B.A.P. 9th Cir. July 16, 2013) (the interpretation of a court order is a legal question subject to a *de novo* review). Under a *de novo* review, no deference is given to the bankruptcy court's determinations. *In re Carey*, 446 B.R. 384, 389 (B.A.P. 9th Cir. 2011).

This Court is ultimately bound by the text of the Bankruptcy Code and the relevant decisions of the United States Supreme Court and the Ninth Circuit. It views decisions from the bankruptcy courts, bankruptcy appellate courts, and other district courts as persuasive authorities.

**B.  Relevant Provisions Under the Bankruptcy Code**

**1.  Avoidance: 11 U.S.C. §§ 724(a),  726(a)(4)**

Section 724(a) of the Bankruptcy Code authorizes a trustee to "avoid a lien[4] that secures a claim of a kind specified in [S]ection 726(a)(4)." 11 U.S.C. § 724(a). Together, Sections 724(a) and 726(a)(4) render a lien avoidable when it secures "[a]ny allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim[.]" 11 U.S.C. § 724(a) (citing § 726(a)(4)). For statutory context, Section 726 sets forth the order in which bankruptcy estate property should be distributed. In this formula, penalty claims fall under the fourth class of claims, which is subordinate to certain secured and unsecured claims.

Here, the parties agree the penalty components of the First Tax Lien constitute

---

[4] The Code defines the term lien as "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37).

claims within the scope of Section 726(a)(4).

### 2.     Preservation: 11 U.S.C. § 551

Section 551, provides that "[a]ny transfer[5] avoided under [S]ection . . . 724(a) . . . is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551.  The legislative history notes that:

> This section is a change from [the prior Bankruptcy Act]. It specifies that any avoided transfer is automatically preserved for the benefit of the estate. Under [the] current [Bankruptcy Code], the court must determine whether or not the transfer should be preserved. The operation of the section is automatic, unlike current law, even though preservation may not benefit the estate in every instance. . . . The section as a whole prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided.

*Van de Kamp*, 908 F.2d at 519 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 91 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5877).

Here, the parties agree Section 551 applies to the extent that the First Tax Lien is avoided under Sections 724(a) and 726(a)(4).

### 3.     Distribution of Unavoidable Liens: 11 U.S.C. § 724(b)

Section 724(b) sets forth a distribution formula that applies to a bankruptcy estate property subject to a lien that (1) has not been avoided and (2) "secures an allowed claim for a tax, or proceeds of such property[.]"  11 U.S.C. § 724(b).  The distribution orders as follows:

(1)     first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2)     second, to any holder of a claim of a kind specified in section 507 . . . ;

(3)     third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

---

[5] The Code defines the term "transfer" to include "the creation of a lien."  11 U.S.C. § 101(54).

(4)    fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5)    fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6)    sixth, to the estate.

11 U.S.C. § 724(b).

## IV.    Discussion

This case deals with the discrete circumstances for when a tax lien is avoidable under Section 724(a) but there are insufficient proceeds from a bankruptcy sale to satisfy all components of the lien.  The parties do not dispute the underlying facts of the Two Tax Liens and bankruptcy sale, or that the penalty components of the First Tax Lien are subject to avoidance under Section 724(a).  However, they do dispute the manner in which Judge Collins allocated the insufficient Proceeds among the components of the First Tax Lien when the Trustee has a claim to the penalty components and the IRS has a claim to the tax and interest components.  As mentioned, Judge Collins' main holdings were (1) the Trustee's avoidance of the First Tax Lien's penalty components under Section 724(a) meant avoidance of an undivided lien; and (2) a *pro rata* allocation of the insufficient Proceeds is proper under the bankruptcy court's Section 105 equitable powers.

The Court must consider two questions of law on appeal.  First, it must determine whether avoidance under Section 724(a) applies individually or collectively to a tax lien that has penalty components and tax and interest components.  Second, it must decide whether a *pro rata* allocation of insufficient proceeds among the components of a tax lien subject to Section 724(a) is consistent with the Bankruptcy Code.  The second question arises because the Code does not provide for a specific allocation method under these circumstances.

The Government argues that Section 724(a) is only applicable to the penalty component of a tax lien.  It maintains a secured-claims-first theory to argue the Proceeds

- 8 -

should be distributed to satisfy the tax and interest components in its entirety despite insufficient proceeds.  To justify no allocation to the Trustee, it reasons that avoidance under Section 724(a) and preservation under Section 551 "do not exist to guarantee that funds will be available for avoided liens."  (Doc. 11 at 32).  It says a priority allocation method is most consistent with the Code, and cites to a recent California bankruptcy court ruling that applied this reasoning. (Doc. 15 at 5–6, 15) (citing *In re Hutchinson*, 2022 WL 1021843 (C.D. Cal. Mar. 30, 2022) ("*In re Hutchinson*")).  Alternatively, the Government argues the Proceeds should be allocated according to the distribution formula set forth by Section 724(b).  (*Id*. at 19–24).  Both of the Government's proposed allocation methods result in the same outcome: all of the Proceeds go to the IRS.

The Trustee points out that the Government has presented these arguments before and says they should fail here just as they have in "every other District Court to consider the issue[s]."  (Doc. 12 at 10–11).  Under his view, the Trustee and the IRS are equal claimants to the same, single lien and so there is no order of priority with respect to the penalty and tax and interest components.  (*Id*. at 12–13).  Thus, the Trustee posits a *pro rata* allocation method is most consistent with the Code, and cites to the *Mackenzie* decision from the Arizona District Court as support. (Doc. 12 at 7–8).

The Court will consider avoidance and allocation in turn.  Because of the scarce case law on either issue, the Court relies primarily on the text and legislative history of the Bankruptcy Code as well as relevant statutory policies as interpreted by the Supreme Court and Ninth Circuit.

### A.    Avoiding a Tax Lien with Multiple Components

The crux of the avoidance issue stems from the many components of a tax lien.  The Government says the application of Section 724(a) is limited to the avoidable *portion* of the First Tax Lien.  (Doc. 11 at 24).  Under its view, when the Trustee avoided the penalty component, the tax and interest component retained its priority as a secured claim.  The Trustee says Section 724(a) empowers him to avoid the First Tax Lien *in its entirety* and preserve for the estate the extent of the penalties.  (Doc. 12 at 12).  Under his view,

components are treated as equal claimants to the same avoided lien. (*Id*. at 12–13). Judge Collins ultimately agreed with the Trustee and held the First Tax Lien is an "undivided lien" for the purpose of avoidance. (Doc. 11-21 at 44).

The manner in which Section 724(a) applies to a tax lien is important because it serves the basis for each of the parties' proposed allocation methods. As will be shown, avoidance of the penalty portion of a lien justifies allocation among prioritized claims while avoidance of the entire lien justifies *pro rata* allocation among equal claimants. *See infra* Section IV.B(3)(b)(i). The Court will provide an overview of the parties' arguments before deciding which interpretation of avoidance is most consistent with the Bankruptcy Code.

### 1. The Government's Position

The Government admits Section 724(a) is "an exception to the secured-claims-first-rule," but argues it applies to the penalty portion only, "not to tax, non-penalty interest, or other non-penalty liens." (Doc. 11 at 24). To bolster this limited application, the Government examines the narrow definition that Section 724(a) references under Section 726(a)(4). (*Id*. at 25). It looks to the statutory context of Section 724, which subordinates penalties, to posit the Code treats penalty components inferior to tax components. (*Id*. at 29).

The Ninth Circuit has confirmed the trustee's authority to avoid and preserve a penalty lien. *See In re Hutchinson*, 15 F.4th 1229, 1234 (9th Cir. 2021) ("*Hutchinson*"); *see also Gill v. Kirresh (In re Gill)*, 574 B.R. 709 (B.A.P. 9th Cir. 2017) ("*Gill*"). However, the Government represents that "whether a penalty lien can be avoided and preserved is a separate question from whether an avoided penalty lien can be used to deprive the same lienholder of principal." (Doc. 11 at 24). The latter question arises only when there is insufficient Proceeds to satisfy both the penalty and tax and interest components. When faced with this scenario, as the parties are here, the Government asserts that "[n]either Sections 724(a) and 726(a) permit underpayment of non-penalty liens[.]" (*Id*. at 27). The Government therefore concludes that Section 724(a) should not apply to avoid a lien in its entirety.

### 2.    The Trustee's Position

The Trustee argues that when a lien is avoided and preserved for the estate "to the extent of the penalties, the lien has two masters – the IRS and the trustee." (Doc. 12 at 12). Under this view, the components should be treated the same because "[b]oth the taxes and the penalties became secured at exactly the same time when the lien was recorded, without regard to which debt arose first." (*Id*. at 10). The Trustee therefore concludes that Section 724(a) applies to avoid a lien in its entirety.

### 3.    Section 724(a) Avoids an Entire Tax Lien

The parties' disagreement boils down to whether the penalty and tax and interest components of a tax lien constitutes parts of a whole avoided lien, or whether each component is treated as separate and distinct for the purpose of avoidance. This confusion is understandable as the Bankruptcy Code does not address the individual components of a lien subject to Section 724(a). So, courts tend to employ both singular and plural verbiage when describing avoidance of a tax lien's penalty components.[6]  Nonetheless, the Court finds applying Section 724(a) to the First Tax Lien in its entirety is most consistent with the Code's statutory text.

The Arizona district court conducted an extensive analysis of Section 724(a)'s use of the word "lien" in *Mackenzie*, 2021 WL 4427069, at * 8.  *See* 11 U.S.C 724(a) ("The trustee may avoid *a lien* that secures a claim of a kind specified in section 726(a)(4)[.]"). The court explained "the singular use of 'lien' . . . suggests that when requiring a lien to be 'not avoidable,' the lien is referred to in its entirety, as opposed to being referred to in the teleological sense[.]"  *Mackenzie*, 2021 WL 4427069, at * 8.  To support this statutory

---

[6] A recent example of this interchanging verbiage is apparent in *Hutchinson*, 15 F.4th at 1231.  There, the Ninth Circuit first summarizes the unpaid taxes, interest, and penalties for a single year as "recorded liens" (plural).  *Id.*  ("In 2011, the IRS recorded liens for unpaid taxes, interest, and penalties against Plaintiffs' residence[.]").  Yet in summarizing an IRS's "proof of claim" for a single year, the circuit court also described the included penalties as a "portion of the claim" (singular).  *Id.*  ( "[T]he IRS in August 2017 filed a proof of claim for both the secured and unsecured portions of its then-existing claim for unpaid taxes, interest, and penalties. The portion of the claim that was secured by the liens on Plaintiffs' home and attributable only to penalties was over $162,000.").

construction, the court raised cases examining the Code's use of the term "transfer" in the same manner.[7]  It reasoned "that the singular use of 'transfer' refers to the entire transfer, not part of it," and this "supports the conclusion that the singular use of 'lien' refers to the entire lien, not part of it."  *Id.*  The Court employs this reasoning here because "there generally is no need for a court to inquire beyond the plain language of the statute" where the Code's "statutory scheme is coherent and consistent[.]"  *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240–41 (1989); *see also Wachovia Bank v. Schmidt*, 546 U.S. 303, 315–16 (2006) ("[U]nder the *in pari materia* canon of statutory construction, statutes addressing the same subject matter generally should be read as if they were one law . . . .").

To be sure, the Court also finds *In re DeMarah* ("*Demarah*") instructive on the treatment of tax lien components in the context of avoidance.  62 F.3d 1248 (9th Cir. 1995). In that case, the Ninth Circuit examined the exception under Section 522(c)(2), which makes a debtor's exempted property liable for tax liens despite its exempted status:

> (c) Unless a case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case, except—
>
> . . .
>
> (2) a debt secured by a lien that is—
>
> (A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or *724(a)* of this title; and
>
> (ii) not void under section 506(d) of this title; or

---

[7] "Other terms in the Bankruptcy Code have been interpreted in this manner." *Mackenzie*, 2021 WL 4427069, at * 8 (citing *In re Zohdi*, 234 B.R. 371, 376 & n.8 (Bankr. M.D. La. 1999) (holding that term "the transfer" in the singular is "talking about the entire transfer and is requiring that the entire transfer fit the consistency requirement" in part because "when the Code refers to 'a transfer' or 'the transfer' it does not intend to place a limit upon the number of transfers that might be avoidable, as the plural is included in the use of the singular under" 11 U.S.C. § 102(7), but "use of the singular is instructive when the question is whether a part of a transfer is not avoidable, because the singular is used to connote a self-contained whole thing"); *In re Polanco*, 622 B.R. 631, 640 (Bankr. D.N.J. 2020) (citing *Zohdi* for the proposition that "section 102(7) of the Bankruptcy Code requires courts to read the singular 'transfer' as plural, so while multiple transfers may be avoided, the use of the singular requires that only whole transfers may be avoided, not parts of transfers")).

(B) *a tax lien*, notice of which is properly filed[.]

11 U.S.C. § 522(c)(2)(A)–(B) (emphasis added).  The debtor in *DeMarah* distinguished a tax lien's penalty component from its tax and interest components and sought to invoke Section 724(a) to avoid liability for the penalty portion only notwithstanding Section 522(c)(2)(B).  62 F.3d at 1251.  The debtor reasoned that Section 522(c)(2)(B) "makes only the tax lien itself unavoidable, not the penalty." *Id.*

The Ninth Circuit rejected this argument, explaining that "[n]othing in [Section] 522(c)(2)(B) divides a tax lien into separate components. The whole amount owed is covered by the lien. . . . Nor does the Internal Revenue Code distinguish between the tax and any penalty or interest when it provides for the imposition of liens." *Id.* at 1251–1252. The circuit court acknowledged that Section 522(c)(2)(A) detaches a lien avoided under Section 724(a) from exempt property. *Id.* at 1252.  However, it went on to explain that this detachment is temporary because Congress "carefully added [Section] 522(c)(2)(B)" to "bring[] back the whole of any tax lien." *Id.*  Section 552(c)(2)(B) thus precludes any recovery under Sections 550 and 551. *Id.* at 1251.

The Government uses the same flawed logic as the debtor in *DeMarah* by suggesting Section 724(a) makes only the penalty portion avoidable, not the tax lien itself. The Court rejects this argument because, like Section 522(c)(2)(B), nothing in Section 724(a) divides a tax lien into separate components and so the whole amount owed is covered by the lien. *DeMarah* also used the singular term "lien" to confirm that "a debt secured by a lien [] is avoided pursuant to [Section] 724(a), which *encompasses* noncompensatory penalties [under Section 726(a)(4)[.]" *Id.* (emphasis added).  But the important distinction is that Section 522(c)(2)(B) is not operative in the present matter to "bring[] back the whole of any tax lien" avoided under Section 724(a).  *See id.*  Therefore, once the First Tax Lien was avoided under Section 724(a), it is avoided as whole and subject to the Trustee's recovery under Sections 550 and 551.  *See DeMarah*, 62 F.3d at 1251.

In sum, the Court concludes that Section 724(a) avoids a tax lien in its entirety, not

just its penalty components.  It therefore affirms Judge Collins' holding that the First Tax Lien "is an undivided lien" for the purpose of avoidance.  (Doc. 11-21 at 44–45).

### B.    Allocation of Insufficient Proceeds Among an Avoided Tax Lien

After a trustee avoids a lien under Section 724(a), the lien is subject to automatic preservation under Section 551.  But the Bankruptcy Code does not provide any specific formula under either Section 724(a) or 551 for distributing insufficient sale proceeds among the components of an avoided tax lien.  The parties thus propose allocation methods that a bankruptcy court should follow.

The Government argues its claim to the tax and interest components should be prioritized over the Trustee's claim to the avoided penalty components.  It says a priority allocation method is most consistent with the Code and cites *In re Hutchinson* as support.  (Doc. 15 at 15).  Alternatively, the Government urges the Court to follow the distribution formula set forth by Section 724(b) to allocate the Proceeds.  (Doc. 11 at 36–46).  It represents that the Bankruptcy Code does not intend the *pro rata* method to apply to secured claims, only unsecured claims.  (*Id*. at 25–26).

The Trustee argues avoidance of the First Tax Lien in its entirety renders the penalty and the tax and interest components as equal claims of the same priority class.  He accordingly asserts allocating the Proceeds among the components *pro rata* is the most equitable approach in the absence of an explicit formula set forth by the Code.  (Doc. 12 at 13–14) (also pointing out there is no distribution scheme for "fraudulent transfers avoided under 11 U.S.C. § 548, or preferences avoided under 11 U.S.C. § 547, or unperfected liens avoided under 11 U.S.C. § 544").  The Trustee further says a *pro rata* allocation method is consistent with the Code and cites *Mackenzie* as support.  Judge Collins agreed.

The Court will first consider allocation based on the distribution scheme under Section 724(b) as it is the only proposed codified method.  Finding it inapplicable, the Court then turns to the parties' proposed priority and *pro rata* allocation methods.

### 1.    Section 724(b) Distribution is Inapplicable

At the outset, the Court finds Section 724(b) wholly inapplicable here due to its

prior finding that Sections 724(a) does not treat the components of a tax lien as separate and distinct.  *See supra* Section IV.A(3).  Section 724(b) explicitly applies to property subject to a lien that (1) "is not avoidable" and (2) "secures an allowed claim for a tax, or proceeds of such property[.]"  11 U.S.C. § 724(b).  Here, it is undisputed that the penalty components of the First Tax Lien subjects it to Section 724(a).  And, as explained above, Section 724(a) authorizes a trustee to avoid a tax lien in whole, not just its penalty components.  *See supra* Section IV.A(3).  Thus, the Government's argument that Section 724(b) somehow applies to an indivisible portion of the First Tax Lien necessarily fails. (Doc. 11 at 36–39).  The Government cites no authority where a court applied both Subsections 724(a) and (b) to a single lien.  The bankruptcy court therefore is not bound by the formula set forth by Section 724(b) when distributing proceeds among a lien avoided by Section 724(a).

Other courts have also concluded that Section 724(b) does not apply to the tax and interest components of a lien that is subject to Section 724(a).  *See In re Hutchinson*, 2022 WL 1021843, at *3–4 (Bankr. E.D. Cal. Apr. 1, 2022); *see Mackenzie*, 2021 WL 4427069, at * 9–10; *see IRS v. Baldiga (In re Hannon)*, 619 B.R. 524, 534 (D. Mass. 2020).[8]  Among the first was the District Court of Massachusetts.  In *Hannon*, the district court concluded that "[b]y avoiding the penalty and interest on penalty portions of the IRS liens, those funds are no longer 'not avoidable' and, therefore, not subject to [Section] 724(b)."  619 B.R. 524, 534.  It said "even a cursory reading" of Sections 724(a), (b) and 551 "reveals an inherent flaw" in the Government's reasoning.  *Id.*

Courts in Arizona and California have adopted the reasoning from *Hannon* in holding that Section 724(b) is inapplicable in these circumstances.  *See Mackenzie*, 2021 WL 4427069, at * 10–11 ("the bankruptcy court did not err in holding that the distribution scheme in [Section] 724(b) was inapplicable to the Tax Lien"); *see Hutchinson*, 2022 WL

---

[8]  The Trustee also cites to 2020 *In re Hutchinson* decision as an example of a California district court rejecting application of Section 724(b) under these circumstances.  615 B.R. 596 (E.D. Cal. 2020), *order vacated, appeal dismissed sub nom. United States v. Hutchinson*, 2020 WL 5551702 (9th Cir. Sept. 15, 2020).  However, this case was vacated by the Ninth Circuit as moot, and so the Court will not consider this decision in issuing its Order.

1021843, at *3–4 ("[B]y the express language of the statute, the priority distribution scheme of [Section] 724(b) does not apply to the [avoided] tax lien at issue.")  Notably, *In re Hutchinson*, the very decision the Government cites to in support of its priority method, is one such case.

To summarize, the plain language of Section 724(b) renders it inapplicable to a lien with a penalty component that is avoidable under Section 724(a).  The Court therefore affirms Judge Collins' finding that the distribution formula set forth under Section 724(b) does not apply when allocating the Proceeds among the components of the First Tax Lien.

## 2.    The Parties' Proposed Allocation Methods

This leaves the Government's priority method under *In re Hutchinson* and the Trustee's *pro rata* method under *Mackenzie* as possible methods of allocation.  *Compare* 2022 WL 1021843 *with* 2021 WL 4427069.  Both *In re Hutchinson* and *Mackenzie* dealt with a tax lien avoided under Section 724(a) and insufficient proceeds from a bankruptcy sale to satisfy all components of the tax lien.  Yet each court employed a different allocation method.  Faced with this divide in the case law, the Court must decide which allocation method is most consistent with the Bankruptcy Code and relevant binding authorities.

### a.    Priority Allocation under *Hutchinson*

*In re Hutchinson* held that the Government "should be paid with respect to the tax and interest on tax portions of its tax lien before Trustee is paid on the avoided penalty portion of the same tax lien."  2022 WL 1021843, at *4.  The California bankruptcy court reasoned that under of order of priorities set forth in Section 726, the penalty components of the lien is "subordinated" to the tax and interest components.  *Id*.  Thus, the *pro rata* allocation method was rejected because the penalty components "would be treated on par" with the tax and interest components.  *Id*.  The court was also wary that the *pro rata* calculations yielded a higher allocation percentage to the Trustee than the Government and said this disproportion would be "inconsistent with Section 724(a)."[9]  *Id*.

Together, Section 726 and *Gill* form the basis for the priority allocation method

---

[9]  The Court is unsure whether a tax lien with penalty components of greater value than its tax and interest components is common.

adopted by *In re Hutchinson*.  In *Gill*, the Ninth Circuit Bankruptcy Appellate Panel interpreted the Code to allow a trustee to "avoid, *subordinate* and preserve the penalty portion of the IRS's tax lien for the benefit of the estate's unsecured creditors."  574 B.R. at 716 (emphasis added).  Its use of the term "subordinate" arises out of the statutory context of Section 726(a)(4), which defines the type of claims a trustee can avoid under Section 724(a).  Under the order of priorities set forth by Section 726, penalty claims fall under the fourth class of claims, which is subordinate to certain secured and unsecured claims.  11 U.S.C. § 726(a)(1)–(4).  Thus, the bankruptcy appellate court concluded the Code "compels subordination" of an avoided tax lien's penalty components.  *Gill*, 574 B.R. 709, 717 (2017) ("[I]t is clear by the operation of [Sections] 724(a) and 726(a)(4) that the penalty which is secured by a tax lien is automatically demoted in a chapter 7 case from the highest priority to the lowest priority, payable only after general unsecured creditors are paid in full.").  However, *Gill* did not reach the issue of allocating insufficient proceeds among the components of an avoided tax lien.

Notably, the priority allocation method is not grounded in any *applicable* provision of the Code.  *In re Hutchinson* and *Gill* justify the priority approach in the order of priorities set forth by Section 726, which involves final distribution of property assets.  *See also Bolden*, 327 B.R. at 665 (following Section 726 for allocation of avoided tax penalties without setting forth any reasoning).  And here, the Government makes an additional attempt to ground the priority approach in Section 725, which involves the trustee's payment on claims before distribution of property assets.  (Doc. 11 at 23).  But as Judge Collins explained, these sections are "just simply not a part of what we're dealing with here" because we are not distributing estate assets to pay claims.  (Doc. 47 at 52).  Indeed, we are addressing avoidance and preservation of a tax lien under Sections 724(a) and 551.  And those Sections are not governed by any order of priorities and do not set forth any particular allocation method.

**b.     *Pro rata* Allocation Under *Mackenzie***

In *Mackenzie*, the Arizona district court held that a bankruptcy court may exercise

its equitable powers to distributes an avoided lien *pro rata* among its penalty and tax and interest components if doing so did not affirmatively violate the Code.  2021 WL 4427069, at *12.  This was in accordance with the Supreme Court principle that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."  *Id.* (quoting *Law v. Siegel*, 571 U.S. 415, 421 (2014)).  Thus, the court affirmed: (1) the bankruptcy court has the equitable authority to create its own allocation method under Section 105(a); and (2) the bankruptcy court's *pro rata* allocation of proceeds for a lien avoided under Section 724(a) is consistent with the Code.  *Id.*

First, the court grounded the bankruptcy court's equitable authority in Section 105(a), which empowers a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Code.  11 U.S.C. § 105(a).  Section 105(a) further allows a court to, *sua sponte*, "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent abuse of process.  *Id*.  Therefore, the court held the bankruptcy court's *pro rata* allocation order was within its equitable powers provided by the Code.  *Id*. at *12.

Second, the court found the bankruptcy court may distribute an avoided lien *pro rata* to carry out Sections 724(a) and 551 because, as explained, the Code does not specify an applicable formula for avoidance and preservation.  It further held "that, because *pro rata* allocation is not *inconsistent* with [Section] 551 and furthers the purposes of that provision, it was therefore permissible for the bankruptcy court to follow that approach pursuant to a different provision of the Bankruptcy Code, [Section] 105(a)[.]"  *Id.*

### 3.    The Code Allows for the *Pro rata* Allocation Method

Applying the reasoning from *Mackenzie*, the Court finds Judge Collins Final Order instructing a *pro rata* allocation was proper.  First, Judge Collins had the "equitable authority to craft a solution" under Section 105(a) given that the Code does not mandate how avoided tax liens are to be allocated.    (Doc. 11-21 at 46).  Second, distributing insufficient sale proceeds among the lien's components *pro rata* is consistent with the Code's provisions and policies.

The Government urges the Court to reject the *pro rata* method because it is "a common law approach untethered from the Code" that only one district court has adopted. (Doc. 15 at 5) (citing to *Mackenzie*). But in *Mackenzie*, the Government had failed to "identif[y] any provision of the Bankruptcy Code with which *pro rata* allocation would conflict (other than [Section] 724(b), which the Court has already found inapplicable []).") 2021 WL 4427069, at *13. As explained below, the Government has again failed to do so. The Court therefore agrees with *Mackenzie*.

### a.   *Pro rata* Allocation is Properly Grounded in Section 105(a)

As to Judge Collins' authority to *sua sponte* create an allocation method for an avoided lien, the Government argues invocation of Section 105(a) is improper. (Doc. 11 at 25). It cites to *Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)* for the general proposition that a court must tie its equitable powers under Section 105(a) to some other provision in the Code. (*Id*. at 25) (citing 392 F.3d 1064, 1070 (9th Cir. 2004))

In that case, the Ninth Circuit affirmed a bankruptcy court's use of Section 105(a) to carry out Section 365(d),[10] "which sets forth a debtor's duties under a nonresidential lease once the debtor has filed for bankruptcy protection." *In re At Home Corp.*, 392 F.3d

---

[10] The relevant subsections provide:

> (3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, not-withstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period.... Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

> (4) ... [I]n a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the **\*1068** debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

*Id*. (quoting 11 U.S.C. § 365(d)(3)–(4)).

at 1067.  Soon after the enactment of Section 365(d), "courts began to arrive at contrary conclusions with respect to when a lease rejection takes effect."  *Id*. at 1069.  These contrary conclusions often arose "as a matter of discretion[] rather than [] a matter of law."  *Id*.  To address this issue, a bankruptcy court "exercised its equitable powers to order that rejection of [] leases be applied retroactively" under Section 365(d).  *In re At Home Corp.*, 292 B.R. 195, 197, 202 (N.D. Cal. 2003), *aff'd*, 392 F.3d 1064 (9th Cir. 2004).

The Ninth Circuit affirmed the bankruptcy court's invocation of Section 105(a) to impose retroactive lease rejection under Section 3655(d) in certain circumstances.  *In re At Home Corp.*, 392 F.3d at 1070 ("Fortunately, we need look no further than § 365(d) itself to see that, in appropriate cases, retroactive lease rejection may be 'necessary or appropriate to carry out' this provision of [the Code.]") (quoting 11 U.S.C. § 105(a)).  It concluded the bankruptcy court's exercise of powers in this manner did not run counter to Section 365(d) or any other provision the Code.  *Id*. at 1071.

The Government's use of *In re At Home Corp.*, whether intended or not, provides further support that Section 105(a) authorizes a bankruptcy court to apply a *pro rata* distribution method here.  The text of Sections 724(a) and 551 do not provide a means of allocating proceeds among avoided lien components.  And similar to Section 365(d) in *In re At Home Corp.*, courts are arriving at contrary conclusions in applying Sections 724(a) and 551 to an avoided tax lien under certain circumstances—namely, when there are insufficient proceeds.  *See* 392 F.3d at 1069.  Accordingly, Judge Collins used Section 105(a) to "craft a solution" and order an allocation method.  (Doc. 11-21 at 46).  His Section 105(a) order was thus "necessary or appropriate to carry out" Sections 724(a) and 551 and therefore a proper use of a bankruptcy court's equitable powers.  11 U.S.C. § 105(a); *see also In re At Home Corp*., 392 F.3d at 1070.  To the extent the Government cites *In re At Home Corp* to require Judge Collins connect his Section 105(a) order to some other provision of the Code, he indeed has done so.

Furthermore, *In re At Home Corp.* refused to define the scope of Section 105(a).  392 F.3d at 1075.  The circuit court "eschew[ed] any attempt to spell out the range of

circumstances that might justify the use of a bankruptcy court's equitable powers in [a particular] fashion." *Id*. (internal citations omitted).  It "likewise eschew[ed] any attempt to limit the factors a bankruptcy court may consider when balancing the equities in a particular case." *Id*.  Last, it explained a reviewing court "need not [] decide whether any one of the factors on which the bankruptcy court relied, standing alone, would justify an exercise of discretion." *Id*.  *In re At Home Corp*. affirmed a bankruptcy court's Section 105(a) order simply upon finding that the order did not run counter to the provision it sought to carry out or any other provision of the Bankruptcy Code.  *Id*. 1071.

Applying these principles, although a bankruptcy court may invoke Section 105(a) to create an allocation method to carry out Sections 724(a) and 551 as it sees fit, the sole limitation is that the method cannot run counter to these provisions "or any other provision of the Bankruptcy Code."  *Id*.  Judge Collins decided to apply the *pro rata* method under these circumstances.  Therefore, the only remaining question is whether the *pro rata* method is consistent with the Code.

### b. *Pro rata* Allocation is Consistent with the Bankruptcy Code

The *pro rata* method is consistent with the Code for three reasons: (1) it supports avoidance under Section 274(a) by treating a tax lien component's as equal claimants; (2) it furthers the purpose of Section 551 to automatically preserve avoided interests for the benefit of the estate; and (3) it harmonizes the Code's competing provisions.  Although the parties engage in various policy arguments to justify either allocation method,[11] the Court will not address them because "it is not this Court's role to weigh policy arguments." *Mackenzie*, 2021 WL 4427069, at *13.

Because the Court concludes the *pro rata* method is consistent with the Code, it need not make any determination regarding the Government's proposed priority method.

---

[11] For example, the Government objects to the *pro rata* method as a practical matter, arguing that creditors would be left with underpaid principals due to its own imposition of penalties.  (Doc. 11 at 27–30).  It says this may result in a deterrence from such practices.  The Trustee replies "if the IRS wants to stop securing penalties for fear that some bankruptcy trustee may someday seek to avoid the lien, that is for the IRS to decide" or "the IRS can go to the Hill and ask Congress to remove, or amend, [Section 724(a)]." (Doc. 12 at 11–12).

So long as Judge Collins applied a consistent allocation method, his Final Order will be affirmed. *In re At Home Corp.*, 392 F.3d at 1075; *see also Mackenzie*, 2021 WL 4427069, at *13 ("Nor is it [a district court's] role to substitute its judgment for that of the bankruptcy court where the bankruptcy court acted within its discretion and authority under the Bankruptcy Code.") (citing *In re Conejo Enters., Inc.*, 96 F.3d 346, 351 (9th Cir. 1996) ("Decisions committed to the bankruptcy court's discretion will be reversed only if based on an erroneous conclusion of law or when the record contains no evidence on which [the bankruptcy court] rationally could have based that decision.") (alteration in original) (internal quotation marks omitted)).

### i.   *Pro rata* Furthers Supports Avoidance of a Tax Lien Under Section 724(a)

First, the *pro rata* method is consistent with the process of avoidance under Section 724(a). The Trustee interprets the purpose of Section 724(a) to recognize the rights of both the Trustee's claims to the avoided portion of a lien and the IRS's claims to the unavoided portion without favoring one over the other. (Doc. 12 at 12). He says this purpose justifies the *pro rata* method to equitably divide the proceeds among "equal claimants." (*Id.* at 13) (citing *In re Centergas*, 172 B.R. 844, 853 (Bankr. N.D. Tex. 1994); *In re National Century Financial Enterprises, Inc.*, 2005 WL 6242169, *10 (Bankr. S.D. Oh.)). By contrast, the priority method would cause the penalty components to be treated as inferior and the taxes and interest components to be treated as superior.

Indeed, Section A of this Order's Discussion clarifies that Section 724(a) avoidance applies to *all* components of a tax lien. *See supra* Section IV.A. Thus, treatment of the components as equal claimants of the same class with equal priority is consistent with Section 724(a). Judge Collins applied the same reasoning to justify his use of the *pro rata* method. He explained that, as an undivided lien, the First Tax Lien is "not a lien that is higher in priority for the tax portion and lower in priority for the penalty portion, it is one lien that has two components." (Doc. 11-21 at 44–45).

The Government cites to *U.S. By & Through I.R.S. v. McDermott*, to say "even if

the penalty and non-penalty components did have equal priority, when there is a priority dispute, the tie goes to the IRS." 507 U.S. 447, 447 (1993). But, as the Government points out, *McDermott* involved another creditor's competing lien. This logic cannot apply to components of the same lien when the IRS is the original lienholder. Avoidance allows the trustee to "step into the shoes" of the original lienholder, which in this case is the IRS. *See United States v. Warfield (In re Tillman)*, 53 F.4th 1160, 1164 (9th Cir. 2022) (citing *Van de Kamp*, 908 F.2d at 519). Thus, the Court rejects the Government's circular application of *McDermott*.

The Court therefore finds the *pro rata* allocation method is consistent with Section 724(a) because it ensures the components of an avoided lien are treated in the same manner.

### ii. *Pro rata* Allocation Furthers Automatic Preservation Under Section 551

Second, the *pro rata* method is consistent with automatic preservation under Section 551, which occurs after a lien is avoided. *In re Tillman*, 53 F.4th at 1170 ("Section 551 provides for automatic preservation of certain avoided liens, including liens avoided under [Section] 724(a)."). Allocating insufficient proceeds *pro rata* among the components of an avoided lien furthers the purpose of automatic preservation by (1) treating the trustee in the same position as the original lienholder; and (2) recovering avoided property interests for the estate.

"[G]enerally, once the trustee avoids a lien against property of the estate, he steps into the shoes of the lienholder and can recover that property interest for the estate, thereby increasing the property of the estate available to satisfy claims of unsecured creditors." *Id.* at 1164 (citing *Van de Kamp*, 908 F.2d at 519). The Trustee effectively "receives all of the former lienholder's rights and priority." *Mackenzie*, 2021 WL 4427069, at *9. Here, "the trustee is [] subrogated to the rights of the IRS's allowed claim" for penalties. (Doc. 12 at 11) (citing *In re Wyatt*, 440 B.R. 204, 213 (Bankr. D. Colum. 2010)). The *pro rata* method would ensure the trustee's claim receives the same rights and priority that the IRS enjoyed as original lienholder. By contrast, the priority method would cause the trustee to be treated

differently than the original lienholder.

The Code further states the purpose of Section 551 is to preserve avoided liens "for the benefit of the estate." 11 U.S.C. § 551. However, the Code expressly limits application of Section 551 "only with respect to property of the estate." *Id.* Section 551 encompasses a list of avoidance provisions. Relevant here, Sections 724(a) and 726(a)(4) empowers a trustee to avoid a lien that has penalty components. Although Section 724(a) effectuates avoidance of a tax lien in its entirety, Section 726(a)(4) tailors a trustee's claim to the penalty portions of the lien as property of the estate. The trustee's recovery through automatic preservation is therefore limited to the extent of the lien's penalty components. *See e.g., Tillman*, 15 F.4th at 1234 (discussing the nature in which automatic preservation applies to the penalty portions of an avoided tax lien). A *pro rata* method would do just that: limit the trustee's extent of recovery to the percentage of the tax lien's penalty components.

Moreover, avoidance and preservation go hand in hand. If a bankruptcy court avoids a tax lien under Section 724(a), but does not automatically preserve any of the avoided funds specifically for the benefit of the estates, this would directly contradict the text of Section 551. *See Hannon*, 619 B.R. at 534 ("[T]he reading . . . by the IRS to preclude a trustee from avoiding the penalty portion of a tax lien for the benefit of the estate is misleading."). Thus, a *pro rata* allocation method supports the congressional intent behind automatic preservation.

### iii.    *Pro rata* Allocation Harmonizes the Code's Statutory Policies

Last, the *pro rata* method is consistent with the Code's competing statutory policies. To justify the priority method, the Government primarily relies on the Code's general policies that adequate protection[12] for liens is mandatory and secured claims are satisfied first before unsecured claims. (Doc. 11 at 19–21) (citing 11 U.S.C. §§ 361, 363, and the

---

[12] "Adequate protection" is a term of art defined under Section 361 of the Bankruptcy Code. *See* 11 U.S.C. § 361.

- 24 -

Fifth Amendment's Taking Clause).  The Government's emphasis that these rules relate to the sale of bankruptcy property and payment on claims is well taken.  As is the notion that "Sections 724(a) and 551 do not undercut" those rules.  (Doc. 11 at 22).

However, even the principle of adequate protection accounts for the potential decrease in an entity's interest through sale of a bankruptcy.  Section 361(2)[13] explains that "adequate protection may be provided by—providing to such entity an additional or replacement lien to the extent that such . . . sale . . . results in a *decrease in the value of such entity's interest* in such property."  11 U.S.C. § 361(2) (emphasis added).  The *pro rata* method does exactly that.[14]  Thus, the Government cannot say the *pro rata* approach "runs contrary to the spirit of adequate protection."  (Doc. 11 at 21).

Moreover, the Government admits that "Section 724(a) is itself an exception to the secured-claims-first-rule[.]"  (Doc. 11 at 24).  It cannot subsequently avoid this exception by dividing a tax lien by its individual components because even  "the Internal Revenue Code [does not] distinguish between the tax and any penalty or interest when it provides for the imposition of liens."  *DeMarah*, 62 F.3d at 1251–1252.

Missing from the Government's discussion are the broad statutory policies behind Sections 724(a) (avoidance) and 551 (automatic preservation) to protect the estate.  Instead, the Government undermines the estate's interest. It narrows in on legislative history explaining that "preservation may not benefit the estate in every instance" and a preserved lien with no benefit "may be abandoned by the trustee under [Section 554]."  (Doc. 11 at 31) (quoting H.R.Rep. 95-595, 376).  But here, the Trustee has not opted to abandon a preserved lien under Section 554 and thus implicitly recognizes some benefit in the

---

[13] The Government represents that adequate protection in this case is the provision to the IRS of "a replacement lien that attaches to the proceeds." (Doc. 11 at 19–20) (citing 11 U.S.C. § 361(2)).

[14] The Government claims the replacement lien must provide "'indubitable equivalent' in value'" in order for protection to the adequate.  (*Id*. at 20) (citing 11 U.S.C. § 361(3)). However, this "indubitable equivalent" standard is not mentioned in the context of when a sale decreases an entity's interest in such property.  *Compare*  11 U.S.C. § 361(2) *with* 11 U.S.C. § 361(3).  The disjunctive nature of Section 361 suggests one form of adequate protection can exist without the other.

avoiding of the First Tax Lien's penalties by invoking Sections 551.  As discussed below, the main goal behind avoidance and preservation is to protect the estate while also ensuring the order of priority among claims, whether secured or unsecured.

Prior to the enactment of the Bankruptcy Code,[15] the Supreme Court explained the broad aim of bankruptcy law is "to provide for the conservation of the estates of insolvents to the end that there may be as equitable a distribution of assets as is consistent with the type of claims involved. Moreover, the prohibition of all tax penalties in bankruptcy is wholly consistent with the policy of the penalty provisions themselves." *Simonson v. Granquist*, 369 U.S. 38, 40 (1962).  It explained the bankruptcy statute "manifests a congressional purpose to bar all claims of any kind against a bankrupt except those based on a 'pecuniary' loss." *Id*.  Sections 724(a) and 551 both embody these policies through avoidance and preservation. *See In re Bolden*, 327 B.R. 657, 664 (Bankr. C.D. Cal. 2005).

Later in *Van de Kamp*, the Ninth Circuit examined the Trustee's general authority to avoid and preserve certain transfers for the benefit of the estate.  908 F.2d at 520.  The circuit court reiterated the "well-established principle that a trustee who avoids an interest succeeds to the priority that interest enjoyed over competing interests." *Van de Kamp*, 908 F.2d 517, 520 (9th Cir. 1990).  So, when a trustee avoids a lien, he assumes original lienholder's priority position.  It further noted the congressional intent behind Section 551 was to "prevent junior lienors from improving their position at the expense of the estate when a senior lien is avoided." *Id*. at 519.

Notably, the above policies were framed to better resolve the tension between junior and senior lienholders when a lien is avoided. But for the first time here, the Court must apply these principles to address the tension between individual claims to a single avoided lien.  The Court starts by harmonizing the goals behind avoidance and preservation of tax penalties.  An apparent theme is the interests and benefit of the estate should be protected

---

[15] The predecessor of Sections 551 and 724 of the Bankruptcy Code was Section 57j of the Bankruptcy Act, which controlled the payment of penalties.  *See City of Philadelphia v. Nam (In re Gi Nam)*, 273 F.3d 281, 289 (3d Cir. 2001) (summarizing pre-Code law); *see also* H.R.Rep. 95-595, 382 (discussing "the policy found in section 57j of the Bankruptcy Act of protecting unsecured creditors from the debtor's wrongdoing").

from other claims.  *See Granquist*, 369 U.S. at 41 (disapproving the enforcement of penalties against the estate); *Van de Kamp*, 908 F.2d at 519 (9th Cir. 1990) (explaining the purpose of preservation is to maintain the estate's priority position in avoidance).  Another is to maintain the status quo of priorities.  *Van de Kamp*, 908 F.2d at 519 ("The section as a whole prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided.") (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 91 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5877).

If the Court were to accept the Government's theory, elevating the IRS's claim to taxes and interests over the Trustee's claim penalties in the same lien would allow the IRS "to improv[e] their position at the expense of the estate when a [] lien is avoided." *Id*.  This would contravene both goals to protect the estate from other claim while maintaining the status quo of equal priority among equal claimants.  As mentioned, the process of avoidance places a trustee in the original lienholder's priority position.  To preserve this protective effect, the Court finds he should also be placed in the same position as other claimants to a same avoided lien.  Distributing the proceeds *pro rata* would ensure this and therefore harmonize the competing policies under the Code.

To summarize, *pro rata* allocation is consistent with the applicable provisions in this case.  It furthers the purpose of avoidance and automatic preservation under Sections 724(a) and 551.  The method also harmonizes the competing statutory policies under the Code by facilitating a means of adequate protection in the context of bankruptcy sales; protecting the interests and benefit of the estate from other claims; and maintaining the status quo of priorities.  Furthermore, *pro rata* application does not contravene Sections 724(b), 725, or 726 because such provisions are not applicable to the present case.  *See supra* Section IV.B(1), (2)(a).  Judge Collins therefore properly exercised his equitable powers under Section 105(a) because his pro rata allocation method is consistent with the Code.  *See In re At Home Corp.*, 392 F.3d at 1075.  The question of whether he should have crafted an alternate allocation method is immaterial.

/ / /

**V.      Conclusion**

The Court affirms Judge Collins' Final Order distributing the Proceeds *pro rata* among the penalty and tax and interest components of the First Tax Lien.  First, the Court agrees that the Trustee's avoidance of the First Tax Lien's penalty components under Section 724(a) meant avoidance of the entire lien. Section 724(a) therefore cannot apply individually to the penalty and tax and interest components of a tax lien.

Second, Judge Collins properly exercised his Section 105(a) equitable powers to *sua sponte* create an allocation method to carry out Sections 724(a) and 551 when there are insufficient proceeds to satisfy an avoided tax lien.  His *pro rata* allocation method is consistent with the Code because it supports avoidance under Section 274(a) by treating a tax lien component's as equal claimants; furthers the purpose of Section 551 to automatically preserve avoided interests for the benefit of the state; and harmonizes the Code's competing policies.   The Court makes no determination as to whether the Government's proposed priority allocation method is consistent with the Code.

Bankruptcy courts are "essentially courts of equity, and their proceedings are inherently proceedings in equity."  *Pepper v. Litton*, 308 U.S. 295, 304 (1939).  Among its powers are "the allowance and disallowance of claims; the collection and distribution of the estates of bankrupts and the determination of controversies in relation thereto; the rejection in whole or in part according to the equities of the case of claims previously allowed; and the entering of such judgments as may be necessary for the enforcement of the provisions" of the Bankruptcy Code.  *Id.* (internal quotations and citation omitted). Judge Collins' Final Order and the *Mackenzie* decision certainly embody these principles of bankruptcy law.

Accordingly,

**IT IS HEREBY ORDERED** that the Final Order and Judgment issued by Bankruptcy Judge Daniel P. Collins of the District of Arizona is **AFFIRMED**.

/ / /

/ / /

1     **IT IS FINALLY ORDERED** that the Clerk of Court shall enter judgment

2  accordingly and terminate this case.

3     Dated this 27th day of March, 2023.

 

 

 

                                             Honorable Diane J. Humetewa

                                               United States District Judge